UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| PRAGYA B. GUPTA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:26-cv-00024-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| KENTUCKY BOARD OF MEDICAL | ) | **ORDER** |
| LICENSURE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the Motion to Dismiss filed by Defendants Kentucky Board of Medical Licensure, Michael S. Rodman, Kristin Ann Turner, William C. Thornbury, M.D., and Dale E. Toney, M.D. [R. 8]. Plaintiff Pragya B. Gupta, M.D. responded in opposition [R. 13], and the Defendants replied. [R. 14]. For the reasons that follow, the Defendants' Motion to Dismiss is **GRANTED** as to Dr. Gupta's federal claims, which are **DISMISSED**, and the remaining state-law claims are **REMANDED** to the Franklin Circuit Court.

**I**

Dr. Gupta is an interventional pain physician who practiced in Northern Kentucky. [R. 1-1 at 7]. On January 6, 2023, a patient, Wendy Fillhardt, filed a grievance with the Board alleging that Dr. Gupta permitted an unlicensed medical assistant to place an intravenous line and administer anesthesia, that her privacy was violated, and that she was overmedicated. [*Id.* at 8]. On April 11, 2023, Fillhardt also filed a medical malpractice action against Dr. Gupta in Kenton Circuit Court, in which she was represented by Defendant Kristin Turner, Esq., who then served as a member of the Board. [*Id.*] Dr. Gupta alleges that Turner assisted with the grievance, was related to Fillhardt by marriage, stood to gain financially from any Board discipline, and did not

1

disclose these matters to the Board. [*Id.* at 9]. Dr. Gupta requested Turner's recusal on May 9, 2023, and alleges the Board never addressed the request. [*Id.* at 9-10].

Facing the prospect of an emergency restriction on his license, Dr. Gupta entered into an Agreed Order with the Board on June 1, 2023, which restricted his practice and required Board approval of any practice location. [*Id.* at 10]. On August 8, 2023, Dr. Gupta entered into an Amended Agreed Order permitting him to practice under the supervision of another physician. [*Id.*] That Amended Agreed Order also contained the provision that Dr. Gupta principally challenges here:

> As an express condition for the entry of this Amended Agreed Order, each party understands and agrees that the Board will never consider any petition for termination or modification of the terms of the agreement in any way that would allow the licensee to practice in an independent setting in the Commonwealth of Kentucky. Any communication by the licensee and/or his agents to the Board attempting to revive this matter or modify or terminate the terms set forth in this Amended Agreed Order will be returned without being provided or forwarded to any Board member.

[R. 1-1 at 11 (quoting Amended Agreed Order, ¶ 3)]. Dr. Gupta alleges this "never consider" provision was negotiated unilaterally by Board counsel, signed by Panel B Chair Dr. Toney, and never presented to the full Panel for approval. [R. 1-1 at 11].

In May 2024, Fillhardt was deposed in her malpractice action and testified that the unlicensed assistant did not place her IV, testimony Dr. Gupta contends contradicts the factual premise of the grievance and the Agreed Orders. [*Id.* at 11-13]. On the basis of that testimony, Dr. Gupta filed a motion to Vacate or Amend the Amended Agreed Order on August 15, 2024. [*Id.* at 13]. On August 20, 2024, Executive Director Rodman returned the motion without presenting it to the Board, citing Paragraph 3. [*Id* at 13–14].

2

Dr. Gupta filed this action in Franklin Circuit Court on October 16, 2024, and later amended his complaint to add the individual Defendants and claims for monetary damages. [R. 8 at 7–8]. The Defendants removed the action to this Court on March 30, 2026. [R. 1]. The First Amended Complaint pleads five counts: (I) that Turner's conflict of interest rendered the proceedings fundamentally unfair in violation of due process; (II) that 201 KAR 9:082 is unconstitutional; (III) a 42 U.S.C. § 1983 claim against the individual Defendants for violations of the Fourteenth Amendment; (IV) that the Agreed Orders are void and unconscionable; and (V) for a permanent injunction. [R. 1-1 at 14–26].

The Defendants now move to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). [R. 8]. They contend that Dr. Gupta's federal claims are time-barred under the one-year limitations period applying to § 1983 actions in Kentucky; that the individual Defendants are protected by absolute quasi-judicial immunity; and that neither the Board nor the officials sued in their official capacities are "persons" amenable to suit for damages under section 1983, with the Eleventh Amendment independently barring the official-capacity claims that remain. [*Id.*] The motion tests the legal sufficiency of the First Amended Complaint. The Court addresses the federal claims first and turns to the state-law claims only after determining whether any basis for retaining them survives.

## II

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *DirecTV, Inc. v. Treesh*, 487 F.3d

3

471, 476 (6th Cir. 2007). But the Court need not accept "legal conclusions or unwarranted factual inferences," *id.*, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Because Dr. Gupta's claims rely on the administrative record—including the grievance, the Agreed Order, the Amended Agreed Order, and the Board minutes—those documents are properly considered at this stage. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court draws on them only to determine the dates and contents of the orders on which the First Amended Complaint itself relies, not to fix any factual dispute against Dr. Gupta.

Dr. Gupta's principal response to the Motion to Dismiss is that his claims turn on disputed questions of fact that cannot be resolved under Rule 12. [R. 13 at 7–8, 21–23]. A factual dispute forecloses dismissal only when it is material to the grounds on which dismissal rests, that is, when the Court would have to resolve the dispute against the Plaintiff in order to dismiss. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (a Rule 12(b)(6) motion tests whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true). The grounds that follow require no such thing. Each accepts the First Amended Complaint's well-pleaded allegations as true, including the allegations the Defendants contest, and asks only what legal consequences follow from the Plaintiff's own account. Those are questions of law and can be resolved now.

Nor do the prior state-court rulings demand a different course. Dr. Gupta observes that the Franklin Circuit Court twice declined to dismiss this action and that Kentucky's appellate courts denied the Board's petition for a writ of prohibition. [R. 13 at 2–3]. But the writ proceedings addressed the propriety of extraordinary appellate intervention, not the merits of the limitations defense, and the circuit court's orders were interlocutory denials entered without a

4

definitive ruling on that defense. [R. 8 at 7–8]. Upon removal, orders entered in the state court "remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450; *see Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 437 (1974). Those interlocutory orders became orders of this Court, subject to reconsideration like any of the Courts's own interlocutory rulings, and they addressed an initial complaint that the First Amended Complaint has since superseded. In any event, the accrual of a § 1983 claim is a question of federal law, and no state court has purported to answer it. *McDonough v. Smith*, 588 U.S. 109, 115 (2019); *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Court therefore considers the Defendants' arguments on a clean slate.

## A

Dr. Gupta's claims are time-barred, and that alone requires dismissal of the Complaint. Section 1983 does not supply a limitation period, so a federal court applies the forum State's statute of limitations for personal injury actions, which in Kentucky is one year. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); Ky. Rev. Stat. § 413.140(1). Although the borrowed state statute fixes the length of the limitations period, federal law governs the distinct question of when a § 1983 claim accrues. *Wallace*, 549 U.S. at 388. A claim accrues, and the one-year clock begins to run, when the plaintiff knows or has reason to know of the injury that forms the basis of the action. *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). Importantly, the limitations clock begins when the plaintiff learns of the injury, not when he later acquires evidence he believes will help prove it. *Reguli v. Russ*, 109 F.4th 874, 883 (6th Cir. 2024) (citation modified). As the Sixth Circuit explained, "the discovery rule begins once a plaintiff learns of an injury from the defendant's conduct—even if the plaintiff does not discover the full extent of the injury until later." *Id.* at 883. The framework thus distinguishes

5

sharply between the injury itself, which starts the clock, and the evidence later marshaled to prove it, which does not. Once a defendant demonstrates that the limitations period has run, "the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)).

Applying that standard, Dr. Gupta's claims accrued no later than the entry of the orders he challenges. The injuries he identifies—the restriction on his license and the asserted conflict of interest infecting the proceedings that produced it—were both known to him when he signed the Agreed Order on June 1, 2023, and the Amended Agreed Order on August 8, 2023. [R. 1-1 at 9–11]. The First Amended Complaint removes any doubt that Dr. Gupta was aware of these alleged injuries because he requested Turner's recusal on May 9, 2023, before the order was entered. This demonstrates that he was aware not merely of the restriction but of the precise conflict of interest on which his constitutional theory now depends. [*Id* at 9].

Dr. Gupta responds that two facts remained hidden until Fillhardt's May 2024 deposition: That Turner had assisted Fillhardt in preparing the grievance itself, and that Turner is related to Fillhardt by marriage. [R. 13 at 2, 12]. This Court accepts those allegations as true, but they do not move the accrual date. Both facts concern the dimensions of a conflict whose existence Dr. Gupta knew well enough in May 2023 to demand Turner's recusal. Under *Reguli*, those details bear on the "full extent" of a known injury, not the revelation of a new one. 109 F.4th at 883. The injury that anchors every federal claim in the First Amended Complaint was complete and known to Dr. Gupta in 2023. The deposition testimony, at most, supplied additional proof for a claim that had already accrued. To hold otherwise would convert the discovery rule into a device for

indefinitely postponing accrual whenever a plaintiff later uncovers a more persuasive way to prove a long-known injury.

Taking the latest of these dates, Dr. Gupta's § 1983 claims accrued on August 8, 2023, and the one-year period expired on August 8, 2024. He did not commence this action until October 16, 2024, and did not seek to add the individual Defendants until August 20, 2025. [R. 8 at 7–8]. Each date falls outside the limitations period. The later addition of the individual Defendants cannot be rescued by relating back to the original pleading. Because the original complaint was filed after the limitations period had run, there is no timely pleading to which those claims could attach. Finally, Dr. Gupta does not invoke equitable tolling, and the First Amended Complaint alleges no concealment or obstruction by the Defendants that prevented a timely suit. *See* Ky. Rev. Stat. § 413.190(2); *Roman Cath. Diocese of Covington v. Secter*, 966 S.W.2d 286, 290 (Ky. App. 1998).

Dr. Gupta's remaining theory locates a timely claim in Executive Director Rodman's August 2024 return of the Motion to Vacate, which he argues constitutes an ongoing constitutional violation that keeps the limitations period open. [R. 1-1 at 13–14]. Where a defendant commits a discrete unlawful act within the limitations period, claims based on that act are timely even if claims based on earlier, related acts are not. *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462 (6th Cir. 2010) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). The dispositive question is therefore whether the return of the motion was itself an independent unlawful act or instead the continuing consequence of one. The return constituted the enforcement of the Amended Agreed Order according to its own terms. Paragraph 3, adopted in August 2023, provides both that the Board "will never consider" such a petition and that any such communication "will be returned without being provided or forwarded to any Board

7

member." [R. 1-1 at 10]. The continued operation of a restriction entered in 2023 is a continuing consequence of a completed act rather than a new unlawful act, and the Sixth Circuit has drawn precisely that line: a continuing violation is occasioned by continual unlawful acts, not by the continuing ill effects of an original violation. *Eidson*, 510 F.3d at 635; *see also Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (observing that the continuing-violation doctrine is rarely extended to § 1983 actions). Were it otherwise, Dr. Gupta could restart the clock at will simply by submitting a new petition and receiving a new return. The point is developed further in Subpart C, where the same question controls the official-capacity claims.

Dismissal on limitation grounds is appropriate at this stage because the bar is apparent from the face of the pleading. Although the statute of limitations is an affirmative defense not ordinarily resolved on a Rule 12(b)(6) motion, dismissal is proper where the allegations in the complaint affirmatively show that the claim is time-barred. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). This is such a case. Every date that drives the analysis is pleaded in the First Amended Complaint or fixed by the documents it incorporates. No fact is drawn from the Defendants' competing narrative, and no further factual development could alter the result. Because the First Amended Complaint affirmatively establishes its own untimeliness, Dr. Gupta's federal claims, Count III and the federal due-process component of Count I, are **DISMISSED**.

### B

Even if the individual-capacity claims were timely, they would be independently barred by absolute quasi-judicial immunity. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). The doctrine extends the absolute immunity historically afforded judges and prosecutors to other officials who perform functions comparable to theirs, including the members and staff of

8

administrative bodies when they act in an adjudicatory or prosecutorial capacity, and the Sixth Circuit previously applied that principle directly to this Board, holding that the members and staff of the Board are entitled to absolute quasi-judicial immunity because "the function and action of the Board was prosecutorial or adjudicatory in nature." *Quatkemeyer v. Ky. Bd. of Med. Licensure*, 506 F. App'x 342, 345, 347 (6th Cir. 2012). Because the immunity depends on the character of the function rather than the identity of the actor, it distinguishes itself from qualified immunity: once the challenged conduct is identified as adjudicatory or prosecutorial in character, the immunity attaches without regard to the plaintiff's allegations about the official's motives or the merits of the underlying decision. *See id.* at 347. Because absolute immunity is a threshold bar that turns on the nature of the function rather than the factual particulars of the alleged misconduct, it is properly resolved on a motion to dismiss, before the parties are put to the burdens of discovery. *See Quatkemeyer*, 506 F. App'x at 345–46 (resolving the Board members' quasi-judicial immunity as a matter of law on a Rule 12(b)(6) motion).

Each act on which Dr. Gupta's individual-capacity claims rest falls within the functions the doctrine protects. The Board's resolution of the Fillhardt grievance was an adjudicatory act. Dr. Toney's execution of the Agreed Order and Amended Agreed Order, as Panel B Chair, was the act by which the Board's adjudication of that grievance was reduced to a final order. This is adjudicatory in the most direct sense. Rodman's return of the Motion to Vacate was the enforcement of a final adjudicatory order according to its own terms, and an official who faithfully executes such an order shares the protection of the tribunal that issued it. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (enforcing or executing an order of a tribunal is intrinsically associated with the adjudicative process and protected by quasi-judicial immunity). As for Dr. Thornbury, the First Amended Complaint identifies no act by him at all beyond his

9

service as Board President, which independently defeats the claim against him because a § 1983 damages claim "must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation modified).

Turner requires closer attention, because Dr. Gupta is careful to characterize her alleged conduct as non-adjudicatory. [R. 13 at 14]. To the extent the claim rests on Turner's participation as a member of the Board, the participation was adjudicatory in function and immune for the reasons already given. Dr. Gupta's allegation that Turner assisted Fillhardt in filing the grievance also fails for the reason that Kentucky law expressly permits any person, including a Board member, to file or assist with a grievance. *See* Ky. Rev. Stat. § 311.591(2); 201 KAR 9:081 § 2. Conduct that Kentucky law expressly authorizes cannot supply the basis for a constitutional violation. A claim built on that private conduct fails at the pleading threshold rather than on immunity grounds. The First Amended Complaint itself alleges that Turner sat on inquiry Panel A, while Dr. Gupta's matter was investigated and resolved by Panel B, and it nowhere alleges that Turner participated in, voted on, or was present for any Board decision concerning Dr. Gupta. [R. 1-1 at 6].

What remains are the allegations that Turner's undisclosed conflict "influenced the decision-making of other [Board] members" and that she "appears" to have provided nonpublic investigative information to Fillhardt. [*Id.* at 15]. Those assertions are conclusory and speculative, and they are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79, 681; *see Crawford v. Tilley*, 15 F.4th 752, 766-67 (6th Cir. 2021) (court disregards conclusory allegations attributing knowledge or influence to a § 1983 defendant at the pleading stage). Stripped of those conclusions, the First Amended Complaint pleads no plausible casual

10

connection between Turner's alleged conduct and the discipline Dr. Gupta accepted. Whether

Turner's challenged conduct is viewed as adjudicatory participation, which is immune, or as

private assistance to a grievant, which the pleading fails plausibly to link to any deprivation, the

individual-capacity claims against her cannot proceed.

The individual-capacity claims are therefore independently subject to dismissal on

absolute-immunity grounds, and as to Turner and Dr. Thornbury, for failure to plead each

Defendant's personal involvement in a plausible constitutional violation.

## C

The Court's prior analysis disposes of Dr. Gupta's federal claims for damages against the

Defendants in their individual capacities. The First Amended Complaint, however, also names

the Board itself and Defendants Rodman, Thornbury, and Toney in their official capacities. The

First Amended Complaint seeks relief against these official capacity defendants that neither

limitations nor absolute immunity resolves—most prominently the permanent injunction

requested in Count V. [R. 13 at 5–7]. To the extent those claims seek damages, they fail at the

threshold: neither a State, nor an arm of the State such as the Board, nor a state official sued in an

official capacity is a "person" subject to suit for damages under § 1983. *Will v. Mich. Dep't of

State Police*, 491 U.S. 58, 71 (1989). Because *Will* construes the statute rather than the Eleventh

Amendment, that bar operates without regard to the procedural path by which the case reached

this Court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002). Dr.

Gupta concedes the point as to the Board itself and frames his claims for damages as claims

against the Defendants in their individual capacities, urging that the case proceed against the

officials in their official capacities for prospective relief. [R. 13 at 5].

11

The Defendants invoke the Eleventh Amendment, which ordinarily bars suits in federal court against a State, its agencies, and state officials sued in their official capacities, because such a suit is in substance one against the State itself. The narrow exception recognized in *Ex parte Young*, 209 U.S. 123, 159–60 (1908), permits a plaintiff to sue state officials in their official capacities for prospective relief to remedy an ongoing violation of federal law. To determine whether it applies, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997).

But there is a threshold complication: this action arrived here by the Defendants' own removal, and a State's voluntary invocation of a federal forum can waive its Eleventh Amendment immunity from suit in that forum. *Lapides*, 535 U.S. at 619–24 (holding that a State's removal waived its immunity from suit on state-law claims as to which it had waived sovereign immunity in its own courts); *Ku v. Tennessee*, 322 F.3d 431, 434–35 (6th Cir. 2003) (applying the voluntary-invocation principle to a federal claim and holding that the State waived its immunity by appearing and defending the action on the merits). How far the waiver principle reaches when a State removes a complaint asserting federal claims is a question the Court need not chart, because the official-capacity claims fail whether or not the Eleventh Amendment survived the removal. If it did, Dr. Gupta may proceed only through *Ex parte Young*, which demands an ongoing violation of federal law. If it did not, the claims are subject to the one-year limitations period addressed in Subpart A, which Dr. Gupta can overcome only by identifying continual unlawful acts rather than the continuing effects of a completed act. *Eidson*, 510 F.3d at 635. Either way, the dispositive question is the same: whether the Complaint alleges an ongoing

12

violation of federal law. Dr. Gupta insists that it does, urging that the Complaint pleads a continuing constitutional injury and seeks to halt its ongoing enforcement. [R. 13 at 5–7].

The relief Dr. Gupta seeks is prospective: Count V requests an injunction that would require the Board to entertain his petition for modification. But both routes demand more than a prospective remedy; each requires an ongoing violation of federal law, and that requirement is not met. For the reasons set out in Subpart A, the conduct Dr. Gupta identifies is the continuing consequence of a completed act, not a continuing violation. The "never consider" provision was imposed in 2023, and its continued operation today is an effect of that completed act rather than a continuing wrong. Rodman's return of the Motion to Vacate was, likewise, the enforcement of that provision according to its own terms—not a new act of independent constitutional significance. An injury that persists only as the lingering effect of a completed violation supplies neither the ongoing violation that *Ex parte Young* requires nor the continual unlawful acts that the continuing-violation doctrine demands.

The Sixth Circuit's decision in *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025), confirms the point. There, the court held that where the challenged procedural defects had concluded when the licensing decision was made, no ongoing procedural violation remained to support prospective relief. *Id.* at 1044. Dr. Gupta offers two grounds for distinguishing *Cooperrider*, but neither withstands scrutiny. [R. 13 at 7]. He first observes that his license was restricted rather than revoked, so that the restriction continues to constrain his practice each day. That distinction speaks to the continuing effect of the 2023 orders, not to the existence of a continuing violation. A restriction and a revocation are both completed acts whose ongoing operation is a consequence rather than a renewed wrong.

13

To be sure, a law that works an ongoing violation of constitutional rights does not become immunized from challenge merely because no one attacks it within the limitations period. *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997). In *Kuhnle*, a county resolution banning through-truck traffic inflicted a new deprivation of the plaintiff's asserted liberty interests each day it remained in effect, so a fresh limitations period ran with each day's harm. *Id.* at 521–23. But *Kuhnle* drew the same line as *Eidson* and *Cooperrider*, and Dr. Gupta's claims fall on the completed-act side of it. The *Kuhnle* plaintiff's takings and property-deprivation claims were time-barred because those harms were fully effectuated when the resolution was enacted, *id.* at 521, and any procedural due process claim was "clearly time-barred" because procedural defects "necessarily occurred prior to or concurrently with the enactment." *Id.* at 521 n.5. The defects Dr. Gupta alleges—Turner's undisclosed conflict, the unilateral negotiation of the "never consider" provision, and the absence of Panel approval—are defects of exactly that kind: flaws in the process that produced the Amended Agreed Order, complete when that order was entered. Nor does the daily operation of his practice restriction bring him within *Kuhnle*'s liberty holding. The resolution in *Kuhnle* was a unilateral legislative command, beyond the county's authority from its inception, whose very maintenance was a continuing exercise of unlawful governmental power. *Id.* at 522 (each day the invalid resolution remained in effect, it actively deprived the plaintiff of its asserted liberty interest and inflicted a new injury). What operates against Dr. Gupta each day is a final adjudicatory order, signed and agreed to by Dr. Gupta, enforced according to its terms. The prospective force of a final order is the ordinary attribute of finality, not a daily renewal of the violations said to infect its creation. Were it otherwise, no agreed order containing a finality provision could ever achieve repose, and

14

the line between continual unlawful acts and the continuing effects of a completed act would collapse when drawn in *Eidson* and applied to licensure discipline in *Cooperrider*.

Dr. Gupta next contends that the Complaint challenges the continuing denial of any meaningful review rather than a closed historical defect. [R. 13 at 7–8]. But that is a description of the same enforcement of the "never consider" provision already addressed in Subpart A, and it fails for the same reason: the refusal to forward his motion was the operation of a term adopted in 2023, not a violation arising anew. Because the Complaint does not allege an ongoing violation of federal law, the official-capacity claims fail on either view of the Eleventh Amendment question. If the Defendants' removal left their immunity intact, the *Ex parte Young* exception does not apply and the immunity bars the claims. If the removal waived that immunity, the claims accrued in 2023 and are untimely for the reasons set out in Part A. On either view, the official-capacity claims, to the extent they rest on federal law, are **DISMISSED**.

Because the federal claims fail for the reasons stated, the Court does not reach the Defendants' remaining arguments directed at them. It does not reach the contention that res judicata bars the Complaint, [R. 8; R. 13 at 22]; the objection to venue, which in any event would be governed after removal by 28 U.S.C. § 1441(a) rather than by the Commonwealth's venue statutes, [R. 8; R. 13 at 22]; or the merits of Dr. Gupta's underlying equal-protection, substantive-due-process, and procedural-due-process theories, [R. 13 at 9–13]. None are necessary to the disposition.

**D**

What remains are Dr. Gupta's state-law claims: his challenge to the Agreed Orders as void and unconscionable under Kentucky law (Count IV), his contention that 201 KAR 9:082 is invalid (Count II), and so much of Count I as rests on the Kentucky Constitution. These claims

15

came before the Court only through the Defendants' removal and remain here solely by virtue of the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

A district court "may decline to exercise supplemental jurisdiction" over state-law claims once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When all federal claims are dismissed before trial, the balance of the relevant considerations (judicial economy, convenience, fairness, and comity) "usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010). The Court exercises its discretion in deciding between these two courses of action. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (a district court "has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate"); *see Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000) (the discretion recognized in *Cohill* survived the enactment of § 1367).

Every relevant consideration here favors remand. This litigation remains at the pleading stage, and the state law claims raise matters of Kentucky law more appropriately resolved by the courts of the Commonwealth. Those courts are no strangers to this dispute since the action originated in the Franklin Circuit Court, and various courts in the state system engaged these issues during its earlier passage through the circuit court, the Kentucky Court of Appeals, and the Kentucky Supreme Court. [R. 13 at 2–3]. Remand also avoids the limitations complications that a dismissal and refiling might invite, which is a consideration the Supreme Court has identified as among the reasons remand will often best serve the values of economy, convenience, fairness, and comity in a removed case. *Cohill*, 484 U.S. at 351–53.

16

The Court therefore declines to exercise supplemental jurisdiction over the state-law claims, which are **REMANDED** to the Franklin Circuit Court. The Court expresses no view on the Defendants' arguments that those claims are time-barred under Ky. Rev. Stat. § 13B.140 or barred by state-law immunity under Ky. Rev. Stat. § 311.603; those questions are for the state court on remand.

### E

A final matter of housekeeping requires the Court to address the Defendants' Motion for Order filed on April 3, 2026. [R. 6]. In that motion, the collective Defendants sought an Order from this Court declaring the Plaintiff's discovery requests served in state court as null and void upon March 30, 2026, when the Defendants removed this action to federal court. [*Id.*]

"The majority view in the federal courts is that discovery requests served in state court prior to removal become 'null and void' on removal." *Perkins v. Trek Bicycle Corp.*, No. 1:24-CV-25, 2024 WL 5359862, at *2 (W.D. Mich. Dec. 18, 2024), *report and recommendation adopted*, No. 1:24-CV-25, 2025 WL 306288 (W.D. Mich. Jan. 27, 2025), *aff'd*, No. 25-1145, 2025 WL 4293608 (6th Cir. Sept. 3, 2025) (citation modified) (collecting cases). When the Defendants removed to federal court on March 30, 2026, the Federal Rules of Civil Procedure became the governing procedural rules in the case. Due to the Motion to Dismiss, the Court never ordered a Rule 26(f) conference and discovery in federal court never commenced. And although the Court remands portions of Gupta's claims to the state court system, those previously filed discovery requests became null and void on March 30, 2026, when this case entered the federal system. The Court therefore **GRANTS** this motion.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion to Dismiss **[R. 8]** is **GRANTED in part** and **DENIED in part** as follows:

   a. To the extent that the Defendants' motion seeks to dismiss Plaintiff's Complaint for failure to state a claim arising under federal law, including 42 U.S.C. § 1983 and the United States Constitution, these motions are **GRANTED**.

   b. To the extent that the Defendants' motion seeks to dismiss Plaintiff's Complaint for failure to state a claim arising under state law, these motions are **DENIED WITHOUT PREJUDICE** to Defendants' ability to re-file these motions in state court.

2. To the extent that Plaintiff's Complaint alleges claims against Defendants arising under federal law, including 42 U.S.C. § 1983 and the United States Constitution, such claims are **DISMISSED WITH PREJUDICE**.

3. The Motion for Order **[R. 6]** is **GRANTED** to the extent the Court considered the previous requests for discovery null and void as of the original removal date.

4. The Court, in its discretion, declines jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c). Plaintiff's remaining state law claims are **REMANDED** to the Franklin Circuit Court for further proceedings consistent with this opinion.

5. The Court will enter a corresponding Judgment.

18

6.   This action is **STRICKEN** from the Court's docket.

This 7th day of July, 2026.

Gregory F. Van Tatenhove
United States District Judge